Mr. Garvin. May it please the court, counsel. Oh, I'm gonna. Let's give him a minute just to get settled here. Sorry. Not at all. May it please the court and counsel, Mr. Wagley. My name is Steve Garvin. I'm here representing Ms. Tabitha Snyder in her appeal from the trial in this matter. I will attempt to reserve three minutes for rebuttal argument. This case has numerous reversible errors, but I will focus my argument this morning on the denial of qualified immunity. Ms. Snyder is entitled to qualified immunity because it is indeed the plaintiff's burden to establish that there is, to prove that there is clearly established violations of constitutional law that occurred. I think the parties are in agreement that the only controlling case law is Wallace v. Spencer, and looking closely at Wallace v. Spencer, rather than allowing plaintiffs to show a clearly established violation, it actually supports that what Ms. Snyder did falls well within the constitutional framework established by Wallace v. Spencer. Wallace v. Spencer states that there must be notification to parents and a judicial order prior to a medical evaluation of children unless one of two things is occurring in the situation, and either of those things is sufficient, and in this case Ms. Snyder had both. One of those is a reasonable concern that material physical evidence might dissipate, or the second is a reasonable concern that some urgent medical problem exists requiring immediate attention. Wallace v. Spencer is insufficient for plaintiffs to use to show that Ms. Snyder's actions violated a clearly established constitutional law. Please go ahead. The bottom line in the case comes down to primarily this reasonable belief that urgent medical care was necessary, and that seems to me to be a factual issue. Yes, the case, one of our two prongs that we rely on is a reasonable concern for an urgent medical condition. The reason it's not a fact issue for the jury is because there is no clearly established case law saying that where you have children with head trauma, injuries to their eyes, who report frequent and constant abuse in the home, where three of three children report that there is abuse in the home, where Ms. Snyder is unable and untrained to conduct an examination for concussions or head trauma, she sees the five-year-old girl who has indications of recent head trauma. The older girl, the high school-age girl, V.C., reported that she was hit in the head as recently as last night and was hit in the head regularly. So she's not trained to evaluate these conditions, and there's no case that says under these conditions it is a clearly established violation for her to take them promptly, urgently, and directly, which is what she did in this case, to an emergency room to see, is there a traumatic brain injury, is there a concussion? The issue is, and this is where the district court I think was having some trouble with your position, that it's not about whether they needed urgent care, it's whether they also, she could do all this without informing the parents about it. I don't want to speculate too much on the district court's state of mind, but I tend to agree with you that that was where I think their error was because that's an erroneous reading of Wallace. Wallace doesn't say that if the exceptions apply, you still need to get the parents there. It doesn't say that. That's right, but I mean I think when we talk about did the children need medical care, the district court didn't seem to doubt that it was reasonable to think that it would make sense to bring them to be checked out. The question is, was it so urgent that they needed to do so without even going to get a court order or talking to the parents, and does that question not turn on basically the reasonableness of Snyder's belief, which is essentially a question that the jury could resolve either for you or against you? There's a lot of parts to that question. Let me try and unpack it from Ms. Snyder's perspective. First, we would fall back on, unless it is clearly established that doing so is a constitutional violation, she is entitled to the protections of qualified immunity. Second, if it devolves into, or not devolves, that's not the right word, if it is concerning or the concern is some type of notice, like why didn't she call the parents and have the parents at least be present or one of the parents at least be present, that would be a new constitutional requirement that this court would be setting forth for the first time because Wallace v. Spencer doesn't say that if the exceptions apply, you also need to attempt notice or accomplish notice. It just isn't in that case. First, let's split up the two groups of children. We have the two children without the physical injury but with testimony about child abuse, correct? The two older children, that is correct, Your Honor. Right. It seems to me that there you look at Mann where it basically says that evidence of child abuse is not sufficient for reasonable concern of a medical emergency and that really segregates that small two children from the child with the black eye and the red line and that sort of thing. So why doesn't Mann at least resolve qualified immunity with respect to the two children? So a couple points, and I tried to take some notes to try to track them. The first, obviously, is Mann is decided after the events in question. So Mann cannot inform the clearly established analysis for Ms. Snyder. Mann is a year and a half, two years after the fact when it comes down. Second, looking at Mann, the facts in Mann do not involve injured children at all. These were children who were subjected to routine examinations at the Polinsky Center in San Diego regardless of injury, and in Mann there were no reports of injury. There were no observed injuries. The examination, I believe, off the top of my head, I think is like three days after the children are taken into custody of the government to characterize it that way. So not only can Mann not inform the clearly established prong, but it also is completely different facts. So for those reasons, we think the proper analysis is to turn back to the plain language of Wallace, which says if you have either of these concerns, you don't have to give notice or get a court order. These are exigencies. Mann uses the word exigency to describe the two exceptions that were recognized by the court in Wallace. If we were to disagree with you on the qualified immunity point when we got to the trial, what do you think is the key error made by the district court? I think there's a lot. Okay, you can have more than one. I would also ask you to take a close look at quasi-prosecutorial immunity because remember, and I will get to your point, I'm not trying to dodge it. When you look at Wallace, Wallace says what's required is notice and a court order, and giving of notice and seeking of a court order are actions for which Ms. Snyder is fully entitled to quasi-prosecutorial immunity if she fell short. But getting to the errors of the district court, I think the jury instructions are where I would ask you to really take a close look, both the instruction during trial that was legally incorrect and unnecessary because the exclusion rule simply does not apply in 1983 cases, but also instruction 2.1. Instruction 2.1 is both incorrect in its statement of the standard, and it is also inconsistent in its own articulation of the standard. And when we have a legally incorrect instruction, as you know, the burden then falls to the plaintiffs to establish that it was harmless. And instruction 2.1, not only did it misstate the standard two times, one of the standards that it gave the jury was that a medical examination is unconstitutional unless there is imminent danger of serious bodily injury. And that's not the standard in Wallace. That's not the standard in Mann. That's not any standard, frankly. So it's legally incorrect, and the burden then goes upon the plaintiffs to show that it is harmless. Obviously, if the jury completely was misinstructed on what is the alleged constitutional violation that they are supposed to evaluate for damages, perhaps the court was even confused when it applied the standard to enter its directed verdict, but certainly the jury was misinstructed with regards to the constitutional violation for which they were asked to determine an appropriate amount of damages. So I hope that answers your question. What is fully at stake here? Is it $175,000? Is that the amount of the exposure to your client? That is correct. That was the jury's verdict. Okay. Has there been any efforts to try to mediate this matter? There have not been efforts to mediate, Your Honor. I'm happy to talk about why if you want, but I don't know that it's really before us today. I'll make one final point with regards to the clearly established and whether or not Ms. Snyder's actions were reasonable, and that comes from the Mueller v. Auker case. When Your Honors are debating or considering or thinking about the question of whether or not Ms. Snyder was acting reasonable, Mueller v. Auker says that it must be judged from the perspective on the scene, and it must embody allowances for the fact that social workers are often forced to make split-second judgments. And that's exactly what happened with Ms. Snyder. These children were placed into her custody by the police department, which put them in protective custody. That wasn't her action. That was police. She now has custody of children. She has this universe of information, both from her own investigation and from other sources, and she has to make a split-second decision. And Wallace v. Spencer is simply insufficient to clearly establish that her split-second decision, I've got to get these kids checked out, is a constitutional violation. I'll reserve the rest of my time and ask you to reverse the decision. Thank you. Good morning. May it please the Court. Andrew Wagley on behalf of the appellees, Ruth and Roy Cheeseman. I want to start out with my discussion this morning by framing the issue, an issue that was in front of the district court and right throughout the record that this is what the court was considering, and it is the parameters of Wallace v. Spencer. That is a Ninth Circuit case from 2000, and this comes into the argument in particular regarding qualified immunity, because when you analyze qualified immunity, you look at whether the right is clearly established, the constitutional right at issue. You do not need, according to the Ninth Circuit authority, you don't need closely analogous prior case law involving an identical fact context, and you don't need a case that's on, quote, unquote, all fours in order for qualified immunity to be denied. Wallace v. Spencer did nothing new. It analyzed the 14th Amendment due process right, the right to family association, which includes, as Wallace said, the right to family association includes the right of parents to make important medical decisions for their children and for the children to have those decisions made by their parents rather than the state, and it includes the right of the parents to be present during medical examinations. And as the panel is well aware, this is kind of a catch-22 situation in the sense that we have important constitutional rights of the parents and the children at issue, and then we also have the state's interest in preventing child abuse or investigating child abuse. But again, the issue— I'll tell you where I have some difficulty with your position, which is why wasn't it at least a disputed fact as to whether Ms. Snyder's belief was objectively reasonable? Your Honor, I think that somewhat turns on what is the burden for the exceptions to Wallace. The way I see it in my mind is that it's like a search warrant requirement, and if there's an exception, then the government has to prove the exception because it's violating a constitutional right unless an exception applies, and also how are the chiefsmen supposed to know what is going on in the head of Ms. Snyder or the defendant? But even—I'll go with you on that. I mean, the district court's order says there was no evidence introduced regarding any perceived medical problem that required immediate attention. Is that not at least disputed? That is not disputed from our perspective. I'm not sure I agree with you, but let's hear what you have to say. Your Honor, I think you need to look at the timeline for when this occurred and how that is fleshed out in the record. The timeline is that the injury occurred on December 5, 2016. The investigatory medical examination occurred on December 8, 2016, so three days later. Ms. Snyder was notified of the issue with the child, which was a bruise around the eye, was notified about that on December 7, the day before the investigatory medical examination. CPS was notified they didn't take action then. The record indicates that they said they couldn't follow their procedure because law enforcement wasn't available and school was almost going to end, but the child was allowed to go home with the father the day of December 7. If it's truly an emergent situation, that doesn't make sense to me. And then also when the investigation occurred on December 8, there was an interview prior to it with Ms. Snyder and law enforcement, and during this interview the uncontroverted testimony at trial was that the youngest child, the 5-year-old, was alert, oriented, no signs of a concussion, sitting up in a chair, able to answer questions for approximately 45 minutes before they took her for an investigatory medical exam. So in this situation, the injury cannot be said to be emergent because they let the child go home the day before, the child is alert and oriented. The fact that you've taken at least a minute to outline a set of facts to point to a conclusion sort of invites the sense there's a dispute in there because there are lots of things in what you just said that I suspect there's a different point of view that could be offered. I think part of it as well is... It's pretty complicated. Part of it is Wallace requires some urgent medical problem requiring immediate attention, immediate attention as in an emergency when the child was allowed to go home the day before. And also, Wallace, there's an exception if there's a material, there's a concern that material physical evidence might dissipate, and there was pictures, there was multiple pictures taken of the bruise. Why wouldn't it be an immediate concern when somebody could believe this reasonably that all three children had reported being struck by the father, some very recently? I think that is, it somewhat goes to the evidentiary ruling of the court that that evidence of that might be material to why the investigation occurred, but it's not material to Wallace because, again, of the right of Wallace and the exceptions to Wallace and allegations of past abuse don't necessarily show an urgent medical problem requiring immediate attention. Was there any physical harm in Wallace? In Wallace, there was not physical harm. So, I mean, it's hard to hang this on some of those broad statements when, in fact, here the social work investigator has in front of her a child with apparent medical issue and testimony from the other children. So what concerns me, and I'd appreciate your comment, I feel like the district court, particularly in making the judgment as a matter of law, used the wrong standard. So it's not what happened when the kid gets to the doctor and the doctor decides, oh, we don't have a concussion, we don't have whatever. It's this reasonable belief. Why isn't that just a pure jury issue? Your Honor, I don't think it comes down to reasonable belief. Again, the language from Wallace is urgent medical problem requiring immediate attention. But it has to be, isn't that predicated on a reasonable belief? I agree, Your Honor. So you've kind of left out the most important part of that that precedes it. You have to have a reasonable belief that X, either you need immediate medical attention or evidence could dissipate. So I don't feel the way this trial was constructed that social worker ever got to really testify and the jury didn't really understand the issue is reasonable belief. Wallace cites to a Second Circuit case. I don't have the citation in front of me. It's Van Hemkins, I believe. And in that case, there was a broken bone involved with the child and the CPS worker was denied qualified immunity because even though they got a court order, they didn't provide notice to the parents. And I think what this entails is Wallace stands for the proposition that you have the right to be present as a parent during an investigatory medical examination. And Defendant Snyder, in the record, didn't even try to notify the Cheesemans that this was going to happen. She didn't. I mean, that's a given. She didn't notify the Cheesemans. Parents weren't involved, period. But that doesn't necessarily impose liability on her. Your Honor, I would say that judgment as a matter of law, multiple issues can be argued to be reasonable. You know, what is reasonable? And when you think of summary judgment, it's the same standard as the cases say as judgment as a matter of law. Judge Bastian made a record that he looked at the declaration of Ms. Snyder that was in the court file where there is a possibility, I believe, of an urgent medical condition. And then he also let Mr. Garvin make a proffer outside of the presence of the jury with Ms. Snyder regarding what evidence he would put on pertaining to, if the exception to Wallace applies. And this is on 1 ER, I believe. It's 208. And in essence, she said, I observed that she had a swollen right eye that was discolored, that there was obvious bruising on the top and bottom eyelids, that she had a red mark. It was clear to me that she had not been to see a doctor since the event that occurred to cause the black eye. Based upon that, it's urgent to take Elsie to the emergency room to assess further. And then she also says at the end of that proffer, this is on 1 ER 212, she says, at the time, I was still in investigation mode when asked why didn't you notify the parents. I was still in investigation mode. My obligation is not to notify a parent as soon as possible. And I felt like my state statute say my obligation is to notify a parent as soon as possible. And I felt like gathering the information from a medical provider was pertinent to have prior to notifying the parents. And so what Rule 50 stands for is that if there's issues based upon facts that are developed at trial that a litigant cannot meet a burden of proof, and here I would offer to the court that it is on the defendant to prove the exceptions to Wallace. If it's apparent that the litigant cannot meet that burden, then the judge, as the gatekeeper under Rule 50, can pull the issue from the jury and determine it as a matter of law. Can I ask you, you referenced this, which was some of the district court's evidentiary decisions, specifically with respect to Roy Cheeseman's alleged abuse of the children, because what the district court said in his order was that this was not relevant to the question of whether Snyder violated the plaintiff's constitutional rights. And I guess I question that because here she obviously observed some physical injuries, but she did know something about what the children were experiencing at home, and I think she also testified that the children are not always fully forthcoming about what's happening at home. And so why was the history of abuse not relevant to her objectively reasonable belief? I think it's relevant to why she started the investigation in the first place, but then again I think it goes back to Wallace and the requirements and who has to prove the exigent circumstances. And from my position I think it's more than just reasonableness. Otherwise it would eradicate the whole purpose behind Wallace. And I think another portion of the court's ruling in that regard is this was a 1983 claim on a constitutional violation in front of a jury, and evidence involving a case where the parents were excluded from an investigatory medical examination, evidence regarding allegations of abuse by one of the plaintiffs is highly, highly prejudicial. And it would taint the plaintiff in the eyes of the jury where kind of like 403, 404B, where they would be so prejudiced that they wouldn't be able to look at the issue. There may need to be some need to put limits on that. I take that point. I guess the question I have is whether this is, on the other hand, unduly limiting Ms. Snyder's defense and being able to explain to the jury as to why she did what she did. I don't believe so, Your Honor, and I apologize if I'm evading the question. No, you're not. You're not. Go ahead. I think part of this is Rule 50 says in the comments in the cases that are set out in our briefing that the issue should be identified to the other side, like the judge should say here is what I think the deficiency is in your case so that you have an opportunity to remedy that. And that is what Judge Bastian said to defendant throughout this case, and it's in the order, in the record at the pretrial conference. In essence, he said this is how I view the case is the requirements of Wallace and the exigent circumstances of Wallace. And before letting Mr. Garvin create a proffer of questions that he was going to ask Ms. Snyder in front of the jury, he said, in essence, allegations of child abuse and seeing a bruise, that's not enough to get to the Wallace exceptions. And so in that circumstance, I think it can be decided as a matter of law. Do you think there's a difference between just seeing a bruise and then seeing a bruise with knowledge of a history of abuse in the home? I think there is a difference for that, but I think even a bruise with knowledge of abuse in the home, you have to look at the timeline again that this investigatory medical examination occurred later in the day on December 8, 2016. It occurred after they had interviewed the 5-year-old, and she was alert, oriented, sitting up in her chair, not having any evidence of concussions and symptoms, and that they photographed the injury multiple times, that the child was allowed to go home with the father the day before and come back and go through this before going to the investigatory medical examination during the end of the day. So I think it has to be viewed in that time frame that was presented to Judge Bastian. You kind of put the social worker between hell and high water. I mean, if you say, well, she let the child go home with the parents, at that point she clearly didn't have enough to take the child away from the parents, and so it's hard for me to understand how much weight we can properly put on that to say that undermines the judgment she exercised the next day with regard to the medical examination. I mean, the whole point of qualified immunity is to protect all but the plainly incompetent or the corrupt. And I know the jury awarded punitive damages here, but I'm hard pressed as I look through the record to find out what it is that this defendant did that was so corrupt or so evil or so malicious that justified punitive damages and, indeed, what it was that was so plainly incompetent. I imagine what I would do in that situation, and I can't say that I wouldn't necessarily do exactly what the defendant here did. So what is it that should take this issue away from the jury? Your Honor, I think what should take it away from the jury is the evidence that Defendant Snyder didn't even try to notify the chief. Well, that focuses this claim not on what the claim seems to be about, but on an obligation to notify the parents, and where is that clearly established in our case law? That's clearly established from Wallace, Your Honor, from my reading of Wallace. We don't have physical abuse in Wallace, so I'm not sure that's a very good fit. And you don't have that obligation if the exceptions are invoked, correct? Correct. Correct, Your Honor. Wallace, again, for qualified immunity, it's the right that is at issue, the right being clearly established, not the exceptions to the right in a specific factual situation. And from our position, Defendant Snyder didn't even try to get to that first level and just jumped into the exceptions based upon an investigatory hunch. Thank you, Your Honors. Thank you. I'll just make two quick points. The first is just a factual clarification. Ms. Snyder did not, in fact, allow the children to go back to the home. She can't take any action until the children are put in her custody, and the first action she takes is to go to the hospital. So I just want there to be clarity on that. That was the police that made that determination, the going home? It was the police or the school officials. It wasn't Ms. Snyder. It just wasn't her. It wasn't her, and she can't be held responsible for others. That's our position. I do agree with Mr. Wagley that we don't need identical facts in order to flesh out the parameters. However, our argument goes to the distinctions between Wallace and this case, and the distinctions are dramatic. Wallace is a singular case with dramatically different facts, and to say that it established clearly established guidelines or constitutional principles for Ms. Snyder I just think overstates it. Wallace was a routine, invasive, anal and vaginal examination of children that occurred in the context of this wild woman who's in a psychological hospital who's saying that there's going to be a satanic sacrifice of the children in the future, so there's no allegation that the children are being abused, just that they are under threat in the future. There's no corroboration for any of this fantastical story, and there's a three-day delay in Wallace between when the children come into the custody of the Escondido Police Department, which was the acting defendant in Wallace, not a social worker. And again, it's this fantastical tale involving future satanic sacrifice. And it's an invasive examination. I know that that's not the most controlling point, but the Wallace court used the word invasive eight times in its decision to characterize the type of medical investigation that they found to be unconstitutional, and of course nothing like that happened on the facts of our case. So I just think there's too many dramatic factual distinctions for it to be clearly established to every reasonable social worker or Ms. Snyder as a reasonable social worker that she was violating the United States Constitution by taking children with injuries, with reports of abuse, including very recent abuse, for a medical examination. And I haven't even touched on today, but it's in our briefing, the concern for dissipating evidence, such as bruises that are concealed by clothes. That's sufficient under Wallace, and she had that concern here because she is not able to disrobe children and examine their whole body. That is uncontradicted in the record, and it's perfectly reasonable for her to think, given the reports of recent ongoing and persistent abuse, that there might be bruises or other injuries that would be concealed by clothing, that she was unable to collect that dissipating evidence. So for these reasons, we ask that you reverse. Thank you. Thank you. We thank both counsel for their arguments. This matter is submitted.
judges: McKEOWN, CLIFTON, BRESS